**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Derrick L. Span, | No. CV-23-02233-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Pinal County Community College District, | |
| Defendant. | |

At issue is Defendant Pinal County Community College District's Motion for Summary Judgment (Doc. 30, MSJ), to which Plaintiff Derrick Span filed a Response (Doc. 34, Response) and Defendant filed a Reply (Doc. 36, Reply). Defendant supports its Motion with a Statement of Facts (Doc. 31, SOF), and Plaintiff supports his opposition to the Motion with a Controverting Statement of Facts (Doc. 35, CSOF). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court denies Defendant's Motion for Summary Judgment.

**I.    Background**

The parties dispute the law applicable to the facts of this case, but, with one exception noted below, the facts themselves are not in dispute. (*See* CSOF at 1.) On April 7, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging violations of Title VII of the Civil Rights Act of 1964. Shortly thereafter, Plaintiff began experiencing difficulties logging into the EEOC portal, which is the primary mechanism by which the EEOC communicates with its petitioners.

Plaintiff communicated extensively with EEOC personnel about his inability to access the portal. Throughout the majority of his interactions with the EEOC, Plaintiff used the email address "scholaradddsss@gmail.com." Plaintiff eventually came to suspect that his email address was contributing to his technical difficulties accessing the portal, so on April 21, 2023, he amended his log-in credentials with a new email address, "scholar1014637@gmail.com." Plaintiff also informed the EEOC by telephone message of his new email address and specifically asked that the EEOC send any notices thereto. On June 20, 2023, the EEOC issued a Notice of Right to Sue by simultaneously posting it on the portal and emailing it to Plaintiff. Plaintiff claims to have not received either method of transmission because (1) he did not see the notice on the portal and (2) the EEOC sent the notice to his old email address, instead of his new email address as he had requested. Regarding the first point, it is undisputed that Plaintiff was unable to access the portal until July 1. On that day, however, Plaintiff did access the portal but apparently failed to see the notice. It is unclear how Plaintiff overlooked the notice. Although Plaintiff insinuates obliquely that the notice was not "visible or available," (*see* CSOF ¶ 13), there is no evidence supporting that indirect allegation. Regarding the second point, it is not clear to which email address the EEOC sent the notice because the EEOC redacted the recipient address in its document production, (*see* SOF Ex. D), but the evidence strongly suggests that the EEOC sent the notice to Plaintiff's old email address. (*See* SOF Ex. F.)

Whatever the cause of Plaintiff's ignorance of the notice, the evidence makes clear that Plaintiff was subjectively unaware of the notice until he was verbally informed of such on the phone on July 26, 2023. On this phone call, according to Plaintiff, he and his EEOC case manager determined that the notice had been sent to his old email address. (*See* CSOF ¶ 15; CSOF Ex. 1, ¶ 14.) Plaintiff requested that the case manager forward the notice to his new email address, but the case manager responded that she could not do so and that Plaintiff would need to contact an official at the Department of Justice (DOJ) to receive the notice at his new email address. (*See* CSOF ¶ 15; CSOF Ex. 1, ¶ 14.)[1] At no point has

---

[1] Defendant argues that Plaintiff's entire conversation with his case manager, including her directing him to the DOJ, is inadmissible hearsay that cannot support

Plaintiff explained why he was unable to simply log into his old email and access the notice there. After contacting an official at the DOJ as instructed, Plaintiff received a second notice of his right to sue from the DOJ on July 28, 2023. (*See* SOF Exs. G, H.) Both the second notice and the DOJ email to which it was attached stated that the 90-day limitations period within which Plaintiff could file suit would begin to run upon Plaintiff's receipt of the second notice. (*See* SOF Exs. G, H.) Plaintiff confirmed receipt of the second notice via email on the same day it was sent.

Plaintiff initiated this action on October 27, 2023, which was 129 days after the issuance of the first notice and 91 days after the issuance and undisputed receipt of the second notice. Plaintiff's counsel attempted to commence this lawsuit one day prior, on October 26, which would have been 90 days after receipt of the second notice, but he inadvertently filed a complaint that "did not correspond" to this case. Thus, although Plaintiff filed a Summons and Civil Cover Sheet within 90 days of receiving the second notice, Plaintiff did not file his Complaint until the 91st day.

Defendant contends that it is entitled to summary judgment because Plaintiff failed to file his Complaint within the relevant limitations period. There is no dispute that Plaintiff's Complaint was subject to a 90-day limitations period that began running upon his receipt of a notice of his right to sue. *See* 42 U.S.C. § 2000e-5(f)(1). There is also no dispute that Plaintiff failed to meet this deadline. The parties' disagreement concerns the

Plaintiff's opposition to summary judgment. (Reply at 7.) Defendant does not develop this argument. In particular, Defendant does not explain how Plaintiff's description of his conversation with his case manager constitutes hearsay. Plaintiff submits that evidence not to establish the truth of anything his case manager asserted, but instead to establish the fact that he was directed to the DOJ regarding his request to receive the notice at his new email address. It makes no difference to Plaintiff's argument whether his case manager was legally correct in so directing him. All that matters is that the conversation occurred. The Court therefore rejects Defendant's evidentiary argument and will treat this fact as undisputed for purposes of resolving the instant Motion. *See Alvarado v. Mine Serv., Ltd.*, 626 F. App'x 66, 70 (5th Cir. 2015) ("To consider the EEOC investigator's out-of-court statement in deciding which letter was the 'correct' one would be using the statement for the truth of the matter it asserts—that the July letter was, in the eyes of the EEOC, the valid one. *See* Fed. R. Evid. 801(c). But for purposes of the tolling analysis, what matters is not which EEOC letter is legally speaking the correct one, but the effect the EEOC's statements had on how Alvarado and his attorney decided to proceed with the case. Considering a statement not for its truth but as an explanation of why the listener acted in a certain manner is a hornbook example of nonhearsay.").

1  nature of Plaintiff's delay and the extent to which the doctrine of equitable tolling excuses
2  his delay. Defendant also presents an alternative argument that, to the extent Plaintiff's
3  Complaint was timely, it should be narrowed to reflect only those issues encompassed by
4  the charge of discrimination filed with the EEOC.

5  **II.    Legal Standard**

6        Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate
7  when the movant shows that there is no genuine dispute as to any material fact and the
8  movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*
9  *Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the
10  outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could
11  resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA,*
12  *LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
13  242, 248 (1986)). The court must view the evidence in the light most favorable to the
14  nonmoving party and draw all reasonable inferences in the nonmoving party's favor.
15  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

16        The moving party "bears the initial responsibility of informing the district court of
17  the basis for its motion, and identifying those portions of [the record] . . . which it believes
18  demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232.
19  When the moving party does not bear the ultimate burden of proof, it "must either produce
20  evidence negating an essential element of the nonmoving party's claim or defense or show
21  that the nonmoving party does not have enough evidence of an essential element to carry
22  its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*,
23  210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of
24  production, the nonmoving party must produce evidence to support its claim or defense.
25  *Id*. at 1103. Summary judgment is appropriate against a party that "fails to make a showing
26  sufficient to establish the existence of an element essential to that party's case, and on
27  which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

28

- 4 -

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

## III.    Discussion

### A.    Statute of Limitations

Plaintiff and Defendant dispute several components of the limitations analysis. First, the parties disagree whether Plaintiff ever received the first notice. Second, in the event that Plaintiff did receive the first notice, the parties contest whether the doctrine of equitable tolling applies to excuse the 38 days of tardiness that accrued between the first and second notices. Third, the parties debate whether the doctrine of equitable tolling operates to excuse the one-day delay caused by Plaintiff's counsel's clerical error in filing the Complaint. The Court examines each issue in turn.

#### 1.    Receipt

The 90-day deadline set forth in 42 U.S.C. § 2000e-5(f)(1) is not a jurisdictional bar. *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986). Rather, "this ninety-day period operates as a limitations period," and it begins running when the EEOC's notice arrives at the claimant's "address of record." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007). The parties agree that the same rules governing notice by post apply to digital notice. Therefore, the digital receipt of an emailed notice and the digital placement of the notice on the EEOC's portal both constitute receipt in the same manner as would traditional post. *See, e.g., Holcomb v. Model T Casino Resort LLC*, No. 3:22-CV-00094-MMD-CSD, 2024 WL 1619362, at \*2 (D. Nev. Mar. 20, 2024) ("Based

on common sense, the Court finds that the upload date and receipt date of a notice of the right to sue sent via the EEOC portal are necessarily the same."); *Long v. Amazon.com Servs. LLC*, No. C23-209RSL, 2024 WL 1860168, at *2 (W.D. Wash. Apr. 29, 2024) ("When a plaintiff is notified of a Right to Sue Notice via an email directing them to the EEOC online portal, the plaintiff cannot postpone the beginning of the 90-day clock to file a civil suit simply by refusing or neglecting to access the portal." (citation and internal quotation marks omitted)).

There are two potential avenues of receipt regarding the first notice: (1) the email sent to Plaintiff's old address and (2) the digital posting of the notice on the EEOC portal. Although the EEOC redacted the recipient address in its document production, thereby precluding definitive knowledge of the email address to which it sent the first notice, there is no genuine dispute as to where the notice was sent. Defendant asserts that the EEOC sent the first notice to Plaintiff's old email, (Reply at 4), and Plaintiff himself states repeatedly that the notice was sent to his old email address. (*See* CSOF ¶ 15; CSOF Ex. 1, ¶ 14; SOF Ex. F.) Moreover, Plaintiff can presumably still access his old email address and therefore could confirm or disprove whether the EEOC sent the first notice thereto. The fact that he has neither done so nor explained why he is unable to do so renders any question as to the destination of the EEOC's email inauthentic. But the mere fact that the EEOC directed the first notice to Plaintiff's old email address does not end the analysis. The limitations period begins running on "the date on which a right-to-sue notice letter arrived at the claimant's *address of record*." *Payan*, 495 F.3d at 1122 (emphasis added). Prior to the issuance of the first notice, Plaintiff lodged a request with the EEOC that the commission send the notice to his new email address. Neither party addresses whether Plaintiff's request served to formally amend his address of record. Thus, although Defendant has established the fact that the first notice was received by Plaintiff's old email, it remains unclear whether that receipt triggered the 90-day limitations period. The Court must therefore consider whether the digital posting of the notice to the EEOC's portal independently commenced the limitations period.

As noted above, "the upload date and receipt date of a notice of the right to sue sent via the EEOC portal are necessarily the same." *Holcomb*, 2024 WL 1619362, at *2. There is no genuine question that the EEOC uploaded the notice to the portal on June 20, 2023. (*See* SOF Ex. E.) However, it is undisputed that longstanding technical difficulties prevented Plaintiff from accessing the portal. Plaintiff claims, and Defendant does not dispute, that he was unable to access the portal until July 1. In a recent order, the District of Hawaii grappled at great length with the question of whether technical difficulties defeat the presumption that a claimant receives a notice letter on the day that the letter lands in his email and/or the EEOC portal. *Asuncion v. Austin*, No. CV 23-00119 LEK-KJM, 2023 WL 5983760, at *4–7 (D. Haw. Sept. 14, 2023). The facts of *Asuncion* and the cases cited therein are distinguishable from those of the instant case, but the analysis is still instructive. The court held in relevant part that:

> Asuncion does not contest that [a certain date] is when he received notice. Rather, he states that he was unable to access the file. But, like in *Lax* and *McDonald*, the ninety-day filing window started when Asuncion received the email, not when he was able to access the document. *See Lax v. Mayorkas*, 20 F.4th 1178, 1183 (7th Cir. 2021); *McDonald v. Saint Louis Univ.*, No. 4:22-CV-01121-SRC, 2023 WL 4262539, at *5 (E.D. Mo. June 29, 2023). The issue of when Asuncion opened the document is not relevant to the start of the filing window, but instead goes to whether equitable tolling is applicable. *See McDonald*, 2023 WL 4262539, at *5 ("But while her counsel's inability to access the portal may be relevant to the application of equitable tolling, it does not delay the start of the ninety-day filing window." (citing *Lax*, 20 F.4th at 1182–83)).

*Asuncion*, 2023 WL 5983760, at *7. The Court agrees with its sister district that, irrespective of Plaintiff's uncontested inability to access the notice letter on the EEOC portal until July 1, the law deems that he received the notice on the date that it was uploaded. Therefore, as in *Asuncion*, the Court will consider the technological impediments suffered by Plaintiff within the framework of the equitable tolling analysis, not the receipt analysis.

. . .

. . .

- 7 -

1

### 2.    Equitable Tolling: First Iteration

2       At the outset, the Court rejects Plaintiff's contention that Defendant waived its

3   counter-argumentation regarding the doctrine of equitable tolling. (*See* Response at 8.)

4   Defendant was under no duty to develop a counter-argument in its MSJ prior to Plaintiff's

5   having made the primary argument in his Response. The proposition urged by Plaintiff

6   would render reply briefing superfluous.

7       "The ninety-day period within which to file a civil action after dismissal of the

8   charge by the EEOC is a statute of limitations subject to the doctrine of equitable tolling."

9   *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997). "In employment

10  discrimination cases, our circuit has adopted a broader application of equitable tolling,

11  consistent with the remedial purposes of the Title VII statutory scheme." *Veronda v. Cal.*

12  *Dep't of Forestry & Fire Prot.*, 11 F. App'x 731, 734 (9th Cir. 2001). "Equitable tolling in

13  an employment discrimination case focuses on whether there is excusable delay by the

14  plaintiff and does not depend on any wrongful conduct by the defendant." *Id.* at 735.

15      The parties dispute whether the second notice equitably tolled the limitations period

16  established in the first notice. That issue, if resolved in the affirmative, moots the

17  preliminary issue identified in the preceding section, namely whether Plaintiff's technical

18  difficulties in accessing the portal constitute an independent source of equitable tolling. For

19  the reasons explained below, the Court holds that the second notice equitably tolled the

20  first notice in its entirety. Therefore, the Court need not address the now-moot issue of

21  whether Plaintiff's technical difficulties also merit application of equitable tolling.[2]

22

23      [2] Moreover, even if the Court were to equitably toll the limitations period in light of
    Plaintiff's technical difficulties, such tolling would only extend to July 1, not July 28 as
24  Plaintiff urges. Plaintiff accessed the portal on July 1, at which time the notice had already
    been uploaded. The law is clear that a claimant receives a notice upon the notice being
    made available to him, "regardless of whether the claimant personally saw the right-to-sue
25  letter." *Payan*, 495 F.3d at 1122. Plaintiff has adduced no evidence that the notice was
    unavailable to him when he accessed the portal on July 1. Plaintiff claims not to have seen
26  the notice, and he submits argumentation seeking to establish his honesty in making that
    claim, (*see* Response at 11), but Plaintiff's honestly is neither in question nor relevant.
27  Defendant has presented evidence indicating that the notice was present on the portal on
    July 1, and there is no controverting evidence regarding that fact. The issue of the first
28  notice's precise date of receipt is academic, however, as the second notice effectively
    displaced it.

In *Nelmida*, the Ninth Circuit declined to equitably toll the limitations period where a plaintiff failed to bring suit within 90 days of receiving a notice letter but succeeded in bringing suit within 90 days of receiving a "copy" of the notice. 112 F.3d 380, at 382, 385. Here, Plaintiff did not receive a mere copy of the original notice, but instead received a new notice with a new date that specifically confirmed in more than one location that the limitations period would not begin running until his receipt of the new notice. This case is therefore distinguishable from *Nelmida*. It is more similar to *Bernstein v. Maximus Fed. Servs., Inc.*, 63 F.4th 967 (5th Cir. 2023), in which the Fifth Circuit applied the well-recognized proposition that "one such situation in which equitable tolling may be warranted is when the EEOC misleads the plaintiff about the nature of his rights." 63 F.4th at 970 (cleaned up) (citation and internal quotation marks omitted). The court held that "a 'two-letter situation' like Bernstein's in which the EEOC advises a claimant in a later letter of an incorrect filing deadline is one where the EEOC has affirmatively misled the plaintiff about the nature of his rights." *Id.* "Though the initial notice sent to Bernstein's attorney was adequate to initiate the filing period, the subsequent correspondence misled Bernstein about a material aspect of the time he had to file, namely when the clock began to run." *Id.* The present case is materially similar to *Bernstein*, and the Court finds the reasoning of that case persuasive.[3]

All three of Defendant's attempts to distinguish *Bernstein* ring hollow. First, Defendant notes that *Bernstein* originates from the Fifth Circuit. (Reply at 8.) Unless Defendant can identify a contrary case from this Circuit, the mere fact that a cogent opinion

---

[3] *Bernstein* is consistent with caselaw from the Second Circuit, which has held that "[g]enerally courts do not penalize litigants for EEOC's mistakes and misinformation." *See Harris v. City of New York*, 186 F.3d 243, 248 n.3 (2d Cir. 1999); *see also Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (holding that the explanation "that an EEOC official had erroneously advised him that the complaint could be filed late" "has been recognized as justification for equitable tolling of the 90-day rule"). However, *Bernstein* may conflict with caselaw from the Eleventh Circuit holding that the "reissu[ance]" of a notice does not equitably toll the limitations period where the reissuance addresses mere technical defects. *See Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000). *Bernstein* is both more recent and more thoroughly reasoned than *Santini*. Therefore, to the extent that *Santini* might be germane here, which is not evident from the face of the rather short opinion, the Court would nevertheless apply *Bernstein*. Moreover, Defendant did not cite *Santini* or any other similar case. Defendant has therefore waived this argument.

originates from a sister circuit hardly constitutes a reason not to apply it. And *Bernstein* is not contrary to the law in this Circuit. For instance, in *Asuncion* the District of Hawaii declined to equitably toll the limitations period because, unlike in the instant case, an EEOC employee informed the claimant's attorney "that she would not issue a second certificate of service." 2023 WL 5983760, at *8. The obvious implication of that holding is that where the EEOC *does* issue a second notice expressly altering the limitations period, equitable tolling is appropriate.

Second, Defendant states that the second notice "was sent by the DOJ, not the EEOC." (Reply at 8.) The Court fails to see the significance of this fact. *Both* notices were sent by the same official, and *both* notices contained letterhead indicating that they originated from the DOJ. (SOF Exs. C, D, G, H.)

Third, Defendant argues that Plaintiff is not entitled to equitable tolling because, by not retrieving the notice from his old email upon his learning of its presence there on July 26, he failed to vigorously pursue his claim. Vigorous pursuit of one's claim is indeed a prerequisite to application of the doctrine of equitable tolling. *Bernstein*, 63 F.4th at 970. As noted above, Plaintiff has not explained why he did not simply retrieve the original notice from his old email upon being informed on July 26 that it was in his inbox. That question of fact notwithstanding, the Court disagrees that Plaintiff failed to vigorously pursue his claim. Plaintiff emailed an official at the DOJ requesting a right-to-sue notice letter, as expressly instructed by his EEOC case manager, on the same day that he spoke with the case manager and learned of the original notice's issuance. This course of conduct, although perhaps not the most efficacious, certainly satisfies the requirement of vigor. Therefore, the Court concludes that the second notice, which explicitly created a new limitations period that displaced that of the first notice, equitably tolled the original 90-day filing deadline.

### 3.    Equitable Tolling: Second Iteration

As explained above, the 90-day limitations period began to run upon receipt of the second notice. After erroneously filing an incorrect complaint, Plaintiff initiated this

lawsuit 91 days after receipt of the second notice. Although Plaintiff directs the Court's attention to the accurate summons and civil cover sheet that Defendant received within the 90-day limitations period, (Response at 7–8), Plaintiff does not appear to seriously contest the proposition that it is the filing of a complaint that initiates a lawsuit. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Instead, Plaintiff argues that his one-day delay should be excused by a second application of the doctrine of equitable tolling. Defendant asserts otherwise. Both parties address this issue in a highly generalized manner. Plaintiff merely quotes rule statements from caselaw recognizing that equitable tolling is available to a complainant who has "actively pursued his judicial remedies by filing a defective pleading during the statutory period." *See O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006); (Response at 13–14). Defendant's counterargument is similarly nonspecific, consisting of little more than the proposition that equitable tolling ought to be applied "sparingly" in a manner that excludes "garden variety claim[s] of excusable neglect." *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); (Reply at 6–9). Neither party identifies any caselaw in which a court considers facts analogous to those presented here.

Although many cases courts have analyzed scenarios in which complainants have filed complaints in incorrect fora, *see e.g.*, *Burnett v. New York Cent. R. Co.*, 380 U.S. 424 (1965), the Court is unaware of any cases in which a complainant has timely filed an incorrect complaint in the correct forum, as occurred here. As between the parties' competing rule statements, the Court finds Plaintiff's more compelling. Although the filing error committed by Plaintiff's counsel could be described as "garden-variety" by virtue of its simplicity, it would also seem to be a quintessential "defective pleading" subject to equitable tolling. The Court concludes such circumstance—a promptly corrected filing defect by which Plaintiff filed a correct summons and civil cover sheet but an incorrect PDF of a complaint—is amenable to equitable tolling. This holding is consistent with similar, albeit factually distinct, caselaw from this Circuit. For instance, the Northern District of California has held that equitable tolling was available to a *pro se* complainant

1    who filed two different "defective pleading[s]" in the form of complaints that were
2    administratively rejected for failing to include accurate civil cover sheets. *Cheyssial v.*
3    *McCarthy*, No. 20-CV-03214-WHO, 2021 WL 3487121, at *7 (N.D. Cal. Aug. 9, 2021).
4    Although Plaintiff here is not *pro se*, "[t]he fact that a complainant is represented, though,
5    does not automatically bar the application of equitable tolling." *Granger v. Aaron's, Inc.*,
6    636 F.3d 708, 713 (5th Cir. 2011). In the absence of any compelling caselaw to the
7    contrary, the Court holds that Plaintiff's one-day filing delay is equitably tolled based on
8    the unique facts of this case. Thus, Plaintiff's Complaint was timely, and Defendant is not
9    entitled to summary judgment.

10           **B.    Narrowing of the Complaint**

11           Defendant argues in the alternative that "even if this Court concludes that Plaintiff's
12    claims were timely filed, it should limit them to those issues that he raised in his Charge of
13    Discrimination." (MSJ at 6.) "Under Title VII, a plaintiff must exhaust [his] administrative
14    remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby
15    affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police*
16    *Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). The scope of a Title VII claim "depends upon
17    the scope of both the EEOC charge and the EEOC investigation." *Sosa v. Hiraoka*, 920
18    F.2d 1451, 1456 (9th Cir. 1990). A plaintiff may bring suit upon claims related to both
19    (1) the actual investigation conducted by the EEOC and (2) any "EEOC investigation
20    which *can reasonably be expected* to grow out of the charge of discrimination." *Id.*
21    (emphasis in original) (quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472,
22    1476 (9th Cir. 1989)).

23           Plaintiff's Complaint asserts three claims, two of which allege a racially hostile
24    work environment and one of which alleges retaliation for submitting an internal complaint
25    related to alleged workplace racial discrimination. (Doc. 1, Complaint ¶¶ 31–48.) In
26    support of these claims, particularly the claims pertaining to an allegedly hostile work
27    environment, the Complaint avers facts depicting a course of racially discriminatory
28    conduct extending back to 2011. (Complaint ¶ 22.) Plaintiff alleges that the workplace

environment created by Defendant suffers from pervasive racism and that he has attempted to raise this issue to Defendant on numerous occasions, never to any avail. (Complaint ¶¶ 21–25.) Rather than remedy its endemic workplace racism, Defendant has repeatedly penalized Plaintiff for his attempts at effecting change. (Complaint ¶¶ 21–25.) Although Plaintiff's Complaint describes a wide variety of allegedly discriminatory conduct spanning over a decade, his charge of discrimination focuses upon one particular occurrence of racial hostility occurring in 2021–2022. In his filing with the EEOC, Plaintiff alleged a pattern of racially discriminatory conduct related to a "secret" investigation intended to discredit Plaintiff as retaliation for his filing a prior internal complaint of discrimination regarding derogatory use of the phrase "brown division." (SOF Ex. B.) Plaintiff claims that he reported derogatory use of the term "brown division" to Defendant on several occasions. (SOF Ex. B.) Defendant has not taken Plaintiff's internal complaints seriously. (SOF Ex. B.) Additionally, Defendant has deprived Plaintiff of interactions with his supervisors, has excluded him from committees, and has prevented him from reporting other instances of racially discriminatory behavior. (SOF Ex. B.) The "brown division" allegations are also present in Plaintiff's Complaint. (Complaint ¶ 23.) Defendant requests that the Court excise from the Complaint all factual allegations except those relating to the "brown division" assertions contained in the charge of discrimination. (MSJ at 6.) Defendant does not seek to limit Plaintiff's *claims*. Instead, Defendant requests that the Court limit the "allegations" and factual "issues" that Plaintiff may use to support his claims. (MSJ at 5–6; Reply at 9.) The Court finds that such excision is not appropriate here.

The allegations in Plaintiff's Complaint pertaining to instances of racial hostility are sufficiently related to the allegations of racial hostility in his EEOC filing that the latter constitutes administrative exhaustion regarding the former. Neither party has submitted any evidence regarding what the EEOC's actual investigation encompassed, and both parties seek to place on the other party the burden of production and the concomitant failure to produce. (Response at 15; Reply at 10.) The dearth of evidence is inconsequential, however, because the allegations in Plaintiff's Complaint fall within the scope of an EEOC

investigation that could reasonably be expected to grow out of his charge of discrimination. It is self-evident that a reasonable EEOC investigation into a charge asserting race discrimination might encompass related acts of race discrimination that occurred in the recent past and that involved the same parties. *See Fox v. MHM Health Pros. LLC*, No. CV-23-00190-PHX-DWL, 2024 WL 4364133, at *16 (D. Ariz. Sept. 30, 2024) ("The Ninth Circuit Court of Appeals has adopted an expansive policy that allows for a finding of exhaustion as to all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . . The inquiry is broad in scope and requires a determination of: (1) whether the agency actually did investigate the type of claim that is deficient on the face of the charge of discrimination; or (2) whether the agency should have investigated the type of claim that is deficient in the charge of discrimination." (quoting *Vasquez v. Kiewit Infrastructure W., Co.*, No. CV 19-00513 HG-WRP, 2020 WL 2842671, at *5 (D. Haw. June 1, 2020)).

Plaintiff's charge of discrimination does not use technical legal terms such as "retaliation" or "hostile work environment," but the course of conduct described therein clearly depicts a racially hostile work environment. Although the charge of discrimination alleges discrete acts of retaliation, it also alleges a broader pattern of racial hostility. For instance, Plaintiff asserted in his EEOC filing that "I have no direct supervisor to report any continued acts of racial behaviors." (SOF Ex. B.) To be sure, the allegations in the Complaint are more temporally expansive than those contained in the charge of discrimination, but the Court finds that any reasonable investigation of Plaintiff's EEOC filing would tend to include within its scope similar past instances of racist behavior, including those which Plaintiff describes in his Complaint. Plaintiff's charge of discrimination depicts what is, in essence, a racially hostile work environment. Claims of hostile work environments naturally encompass a course of conduct beyond mere discrete acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). "Their very nature involves repeated conduct." *Id.* It would therefore be inappropriate for the Court to

1    artificially constrain this lawsuit to only those exact facts alleged in the charge of
2    discrimination.

3    Defendant has not argued that any facts or claims pled in the Complaint fall outside
4    of any relevant limitations period regarding the time within which to file an EEOC charge.
5    Defendant's argument is focused solely on whether the "issues" described in the Complaint
6    bear a substantive relation to the facts alleged in the charge of discrimination such that
7    Plaintiff may be deemed to have exhausted his administrative remedies. The Court
8    concludes that they do.

9    **IT IS THEREFORE ORDERED** denying Defendant's Motion for Summary
10    Judgment (Doc. 30).

11    **IT IS FURTHER ORDERED** lifting the stay of discovery imposed by the Court's
12    prior Order (Doc. 39).

13    Dated this 12th day of December, 2024.

14

15    Honorable John J. Tuchi
      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28